Submitted and counselor excused. The next case for argument is United States v. Sweet, docket 23-5049, counselor. Good morning, your honors, counsel, and may it please the court. I'm Mia Yaffe on behalf of Mr. Alexander Sweet. So this appeal follows Mr. Sweet's trial on a number of child pornography charges, and as most relevant here, an enticement charge. And that's the charge that carried Mr. Sweet's life sentence. And there are two remaining issues on appeal at this stage. The first is issue one in the briefs, the sufficiency of count one of the indictment, which is the enticement count. And the second is plea and prosecutorial misconduct during closing arguments. And I'd like to start with the first issue, and because I think this is going to inform both the preservation and merits questions in this case, just with a high-level framing of what we're talking about when we're talking about an insufficiently specific indictment. So the basic doctrinal principle here is that an indictment has to allege enough factual detail to provide the accused with a basic understanding of the events that were presented to the grand jury and for which he must answer for in court. And in other words, the question to ask is, does the language of this indictment tell the defendant what particular criminal act he's on trial for, or does it just explain a generic type of crime? And I want to be clear, because this comes up in the answer brief a bit in different places, that this is a different inquiry than what courts consider when you're talking about a bill of particulars or even discovery. So if you think of a spectrum of information you might receive. Let me ask you this. Was this incident with the young child, was that before the grand jury? So we don't have the grand jury transcripts in the record. What I will point to, though, is that- Was it before anybody? And it appears that the court asked, is he charged with that? No. Is there notice of that? No. There's no video of it? No. You just said that people are told of the criteria of the grand jury. Correct. Is told all the facts so a person can know what he's charged with. This is exactly the issue that we're raising. How does that square with what the court asked and what the answers were? Yeah, it doesn't square. Doesn't square at all. It doesn't square. The indictment is not specific enough on this point. And I'll just point also, while we don't know exactly what was before the grand jury in the record, what we do know is that three days before the original indictment, which as the government points out, count one is identical in both the original and the superseding indictment, three days before there's a preliminary probable cause hearing in front of the court, the government puts forward its evidence and there's nothing about this lewd molestation. So I think the reasonable inference here is that this wasn't before the grand jury, though I can't say that for sure. But we do also have the answer brief where what the government says is, you know, we didn't, maybe Mr. Zweig didn't know about it, but the investigation was still nascent and ongoing at the time that the indictment was filed, which to me suggests the government saying, yeah, this might not have been before the grand jury. And that's a huge problem because the government doesn't dispute, or at least I don't understand them to be disputing. But this was a distinct theory of prosecution of enticement in this case. And we know that both based on language in the answer brief where they talk about the government's trial theory, but also because it was argued to the jury in closing arguments as a distinct way of convicting Mr. Zweig on enticement, and because it's presented to the jury in the jury instructions as a distinct way of convicting Mr. Zweig on enticement. So I think there's no question here, but what we're talking about is the type of thing you need to have in an indictment, not just in discovery, which is, what are you on trial for? As the indictment reads, it says, Mr. Zweig, you're accused of enticing MLC to do a bad thing. Did you ever seek a bill of particulars in this case? We did not, but that's neither here nor there for an indictment sufficiency issue, Your Honor. And we know this from the Supreme Court's decision in Russell. That was consolidated six different cases there. Four of the six, I believe, is the number, never requested a bill of particulars. And the Supreme Court specifically says, that's not what we're talking about. A bill of particulars cannot cure an enticement effect. No, no, I'm just curious as to whether you had done that. But no, we did not do that in this case, Your Honor. Are you going to do it in the next case? Sorry? Are you going to do it in the next case? Well, I suppose it would be good practice, but it certainly wouldn't solve the issue, regardless of whether we do or do not. Because the point is, do we know that this theory of prosecution was before the grand jury? And are you aware from the day the indictment's filed of what it is you're going to have to answer in court? But counsel, can I ask, the lewd molestation may have been a theory, but it wasn't the only theory. Because I read the charging documents that counts two through seven are basically subsumed as sexual activity in count one. And because the jury reached verdicts on those counts, how can we conclude then, or why can't we just conclude there was a unanimous verdict on this element in count one, and we know that counts two through seven could support it? Sure. So I think this gets to the harmless error part of this case. And I'll just caveat this at the beginning, with this is the constitutional standard of harmless error that the government needs to prove as their burden. The reason we can't say it's harmless in this case is because the sexual conduct itself doesn't prove the actus reus, the heart of an enticement charge. Because what we know from cases like Isabella, and Faust, and this court's recent decision in Flex, is that the core of what you're criminalizing in count one is the act of persuasion, the efforts, knowing efforts that the defendant takes to persuade a minor to do something unlawful. So the fact that there is, in fact, unlawful sexual conduct or activity that occurs in this case might be circumstantial evidence to some degree of persuasion. But it's not dispositive evidence of persuasion. And that's really what we need from the enticement charge. It's what makes it different than just possession of child pornography. And I will note that the production counts have some overlap with the enticement charge. We know from Isabella, again, that production is a broader, at least in terms of the verbs that we're talking about, production is broader. And you can commit production of child pornography without committing enticement to produce child pornography. But on the evidence in this case, can you? No. In other words, the jury heard more than simply the sexual acts. The jury heard how this began, how these two people met, her age, his ability to persuade her to do things that young people typically don't do. Why isn't that enough? So we're not on a sufficiency of the evidence claim here. Perhaps that couldn't be enough to meet a sufficiency of the evidence standard. But it's not dispositive here. And that's because however this court or people in this room might consider how controversial this relationship is, it is a lawful relationship that they are in. Mr. Sweet and Ms. D are dating for approximately two years. A lot of their conversations are sexual in nature, but they are allowed to be because there is some lawful sexual activity that can occur between them. So the existence of sexual conversations doesn't show what's at issue here, which is did Mr. Sweet knowingly entice, persuade, induce MLC to commit child pornography or to commit a lewd molestation against another child? It is also possible on these facts. And this is not an endorsement of the conduct. But it is also possible on these facts that when you're in a relationship with someone, either party can have the idea to make a sexual video. Mr. Sweet certainly should not have gone along with it. But MLC never testifies that it's his idea. She's silent on whose idea it was. She doesn't talk about any of the communications that lead up to their making child pornography. The only specific thing we know from the record, the only specific evidence of persuasion and enticement in this case is for the lewd molestation theory. And that's what MLC testifies specifically. Mr. Sweet came over when I was babysitting another child. And he told me that I needed to do this thing. I needed to do this molestation of this other child, or he would do it himself. And I think that is an act that is criminalized by the enticement statute. And that is the clearest evidence of enticement we have in this case. And it's not a theory that should have been before the jury on this indictment. Counsel, let's say that when the government began to introduce that evidence, the lewd molestation, there's a sidebar for the objection. And the court asked the prosecutor, any notice provided to us? And that dialogue went back and forth. Let's say that the judge at that point sustains the objection. Is the indictment still facially deficient? I think the indictment is probably deficient at that point, Your Honor. But there wouldn't be prejudice where it would be reversible error on appeal. And the reason for that in this kind of unique case is that you have the conduct for the other theory, the government's other theory of enticement portrayed in the other six counts in the indictment. So we know that those facts came before the grand jury because they're in those counts. And we know that Mr. Sweet had notice of it. And I'll just point this court to its opinion in Staggs, United States v. Staggs, where it's a continuing criminal enterprise case, but they basically review the specificity of the indictment. And they say, you know, in this circumstance where count one doesn't incorporate by reference the other counts, but the information that's required to underline count one is in those other counts, we're not gonna find a grand jury or a notice problem. And so I think in this limited context, had the court sustained the objection, the harm would arguably have been mitigated. That's not what the court did. And so we do, we are presented with serious harm to Mr. Sweet. Does it matter that the defendant would have known about this conduct that the jury found? In other words, it wasn't a complete surprise to him. Now, what are they saying? With the babysat child and therefore, as the defendant read the indictment, the indictment, he would say to himself, well, it could be this, it could be that. I don't know what they know and how they know it. And so we're gonna file a motion on rule 12. So a few things. At the start of this case, we don't know that the defendant knows that. We don't know if it happened. And we presume that the law tells us, we presume that a defendant is innocent of the charges brought against him for purposes of understanding the specificity of an indictment. So I don't think it's a fair assumption that when this indictment's filed, Mr. Sweet somehow knows of this conduct. But the conduct had happened or it hadn't happened. And the jury found that it had happened. Well, possibly, Your Honor, that's the point here. There's a high likelihood that that is what the jury found. But the point is that Mr. Sweet was prejudiced because throughout the pretrial proceedings, he doesn't know he's getting prepared to defend against this theory of the case. And then at trial, he's hit with it for the first time. There's no dispute from either party here that this was totally sprung upon Mr. Sweet at trial. The court itself, as Your Honor was pointing out, is surprised that this comes up. In fact, three or four days before the start of trial, the court issues an order denying a continuance for Mr. Sweet. And it refers to all seven counts as age-related to child pornography. So I think there's no question here that this is something that a pro se defendant is being confronted with at trial for the very first time. It's hard for me to understand. There'd be no prejudice there. But regardless, this court has equated a lack of notice with prejudice in these types of cases. I think I might reserve the remainder of my time for rebuttal unless the court has further questions. Thank you. May it please the court, Thomas Duncombe for the United States. Mr. Sweet was not convicted because he was prejudicially surprised by the government's trial theory. How do you know? We know that for several reasons. The first reason is Mr. Sweet did nothing during the trial to indicate that he was actually surprised by the evidence. The other reason we know is that the evidence of enticement, especially the non-lewd molestation-based enticement, was overwhelming. Did you submit special interrogatories to the jury? No, and that's actually meaningful in this case and cuts in the government's favor because during the jury instruction conference, Mr. Sweet, who was working collaboratively with Mr. Campbell throughout the trial, Mr. Campbell cross-examined most of the witnesses and delivered the closing argument, but during that closing instruction or jury instruction conference, Mr. Sweet asked for a special verdict form as to the child pornography counts. In other words, which videos do you find constituted the child pornography? Specifically, and the government's response to that was, well, Your Honor, at this point, the indictment is what it is, and any challenges to the integrity of the indictment have been waived. The defendant specifically didn't ask for a special verdict form as to count. Why was he pro se? I didn't understand that. Mr. Sweet, by all accounts, had very strong opinions about the types of arguments that he wanted to raise. Even when Mr. Campbell agreed to file a motion to dismiss on Mr. Sweet's behalf, Mr. Campbell, Mr. Sweet revealed at an ex parte hearing on the motion to withdraw counsel, Mr. Campbell relied on a different theory. Mr. Campbell relied on a right to privacy theory, whereas Mr. Sweet wanted to raise a First Amendment theory. Mr. Sweet, throughout the process, filed a number of pro se motions, and he wanted not only the motions that he wanted, including to be able to say that it's not child pornography if she factually consents, and it's not child pornography if we're married. He also filed, it should be noted, a Rule 12b3 motion. It was a Rule 12b3b1 motion. He alleged that count one was duplicitous because it joined together attempted enticement and enticement. The court ruled on that on the merits. And that's at the record of volume one, at pages 348 and 349. Counsel, you said, and you began by saying that Mr. Sweet did nothing to express his surprise. He objected to the evidence, and before he, as I read the sidebar, what he articulated was somewhat unintelligible, but the court on its own really pressed the notice evidence from the beginning. So other than objecting, what else did he need to do? He could have done what he did at any point during the trial, at numerous points during the trial, which is ask for a sidebar, ask for a bench conference, or have Mr. Campbell ask for a sidebar or ask for a bench conference to revisit evidence that had just come in, or to ask for a discovery that he hadn't yet been allowed to view. He specifically, at a break in the trial, asked for the child exploitation materials because he wanted to watch the videos during the break. And it should be noted the government was very gracious throughout this process, including during the trial, about letting Mr. Sweet view whatever discovery he needed to view. So there's been no indication in this case, including from the appellant, that Mr. Sweet lacked notice of the fact of the lewd molestation. Does the government concede that it did not provide any notice of these events to Mr. Sweet prior to introducing it at trial? Absolutely not, we do not concede that. There's no evidence in the record either way about what discovery was turned over, about what emails were exchanged between counsel. And the reason there's nothing in the record about what the discovery showed, about the facts underlying the indictment, is that the appellant never raised a Rule 12b3 motion on anything like it. Well, the court sort of covered that. Sorry, Your Honor? The court sort of covered that and said, you know, was there any notice? No. I mean, you can't argue that, hey, well, maybe he didn't know because the government said he didn't know. No, Your Honor, with respect, what Mr. Snow said was... Is he charged with that? No, sir. He's charged with everything within the boundaries of any activity that someone could be charged with. That's a little vague. Is there notice of that? There is no notice of that, Your Honor. The way it's pled, any sexual activity could be prosecuted. That's a little vague. Is there a video on it? No, there's no video. I mean, yes. And it is nothing to suggest that he knew that he was about to be sandbagged. Well, with respect, Your Honor, there's several things that indicate that he wasn't sandbagged. Number one, this was a defendant, even though he was pro se, who knew how to tell the court when he felt like he was being sandbagged. At several points during the trial, he made a Brady motion during the trial. He said that there's a friend that he, that Mr. Sweet showed these nude videos of MLC's genitalia to, but he said, well, there's a rule 11 that hasn't been turned over. That was Mr. Sweet bringing that up pro se, a break in the trial. Not only that, but I would respond partially and bring back what Judge Federico, to what Judge Federico said about the colloquy. Mr. Sweet was, I wouldn't call it unintelligible. The only other thing he said besides objection was in response to what the government said, which was he's charged with anything that could be charged with a sexual act. Mr. Sweet corrected and said, was enticed through the means of interstate commerce to effect that. So in other words, Mr. Sweet, to the extent we can discern what he was raising, and it seems like from another part of the record, which I can get into, he was raising a relevance or a 403 objection, but what we can discern from the record is that he was saying, you can't prove that I enticed her to do that through the means of interstate or foreign commerce. Again, we don't know what objections specifically he was raising, but 10 pages earlier, he objected to the evidence that he had raped MLC with his gun. And when he raised that objection, he said, this goes to relevance, and Mr. Snow made very similar remarks to what he did in this colloquy, which was he's charged with everything that could be charged as an illegal act under count one. That's the indictment that we've got at this point. And Mr. Sweet says, well, I'm not charged with rape in the first degree. In other words, Mr. Sweet didn't raise these objections because he didn't know about these facts or because these facts hadn't been turned over at all in discovery. He was raising these objections because he didn't see how this wouldn't be more prejudicial than probative, given that he's not specifically charged with the rape rate instrumentation. As far as the government can see, the only reason why we're here talking about the lewd molestation and not the rape with firearm evidence is that the rape with firearm evidence was, that theory was disclosed in the trial brief. However, the trial brief is kind of a red herring in this case, because number one, the government never has to file a trial brief, and number two, it doesn't give rise to any rights on behalf of the defendant when the government chooses to file a trial brief. Did the court order a trial brief? There's a trial briefing schedule, Your Honor, but there are... Is there a court order? There's a trial briefing... Is it a suggestion, well, here's the briefing schedule if you want to follow it, or did the court order the government to file a trial brief? The court did not order the government to file a trial brief, and the way it works in the Northern District is if the government wants to submit a voir dire or jury instructions or a trial brief, there's a deadline for that, just as there's a deadline for motions, pre-trial motions. And in this case, the other thing that I would point out on the waiver issue, the court specifically reminded Mr. Sweet that if he wanted to raise a motion for a bill of particulars by the motions deadline, under Rule 7F, he cited chapter and verse, he could file that by March 9th. And Mr. Sweet had the representation of counsel through that pre-trial deadline. In this case, I want to respond to something that my colleague mentioned in her presentation, saying that somehow the lewd molestation was the strongest evidence of enticement. The lewd enticement was the weakest evidence of enticement in this case. In this case, the evidence that Mr. Sweet enticed MLC to make and possess child pornography was Legion. He sent a 15-year-old a nude photograph of herself, and then he bought her a phone, he told her how to set up the phone, he told her when to press play when they made videos, and he told her what sex acts to do during the videos. And then he displayed power over her during the relationship by telling her when she woke up naked with vomit in her hair, oh, you're naked with vomit in your hair because I had sex with you last night after I gave you alcohol and drugs. And then he exhibited power over her by telling her, oh, by the way, here are some of the videos that we took when you were still 15 before we met in person during the first few months of our courtship where you showed your genitals. I showed those to my buddy. I just want to let you know that. And he let her know that he had a gun on him at all times. So this is not a case where the evidence as to enticement on the non-lewd molestation crimes was weak or was in question. In fact, as Mr. Campbell ably pointed out in closing argument, the lewd molestation was the weakest because it was the only one that wasn't corroborated. Even the rape in the first degree, or the rape by the firearm was corroborated by the fact that Mr. Sweet used to be an armed security guard and Mr. Sweet had a holster in his car. And in this case, the question on the merits is whether the indictment conformed to minimal constitutional standards. And this court has never held that an indictment for enticement must spell out the enticement predicates in order to be constitutionally sufficient. So for the court to wade into that, this would not be the case to do that, to breach new ground because the claim was not preserved in any way. And if the court had found, all right, I understand you're making basically a Rule 12b3 motion, the court would have inquired as the court did in Flex and as the court did in Doe, whether you could have gotten notice of this through discovery because that won't cure a defective indictment, but it will cure the prejudice, which as this court said in Mobley, the defendant can't just cite a defective indictment. The defendant also has to come forward with evidence of prejudice. In this case, there's every evidence that Mr. Sweet and Mr. Campbell did an able job of countering the lewd molestation evidence and that the evidence on all the other enticement predicates were stronger. Unless the court- I believe that, in all probability, he was convicted on the enticement charge. Yes, Your Honor, and specifically on the non-lewd molestation predicates. And how do we know that? Well, again- Just because it was good evidence, they might have discounted it and said, we get that little kid evidence, that's what really did it. We don't know that for sure. We don't, that's right. But it's not just the strength of the case on the child pornography enticement predicates or the weakness of the case on the lewd molestation predicates that leads to the lack of prejudice. It's the fact that, as in Doe, there was never a request for a bill of particulars, there was never a request for a continuance, there was never a request for, and he doesn't have to use any magic words here, the court was very understanding of the fact that Mr. Sweet was pro se, and at various points the court said, take your time, I wanna hear what you have to say, is there anything you wanna raise before we start back up again? And at several points he did raise things that, you know, I didn't get notice of this, I didn't get discovery on this, nothing on the lewd molestation except the word objection. And under Hernandez-Rodriguez, that is not the court sua sponte explicitly raising anything with regard to the sufficiency of the indictment. So for all those reasons. Counsel, before you sit down, can I ask you about the third issue, the plain error argument? Yes. Does the government make any concessions as to whether or not the closing argument was plain, or error that was plain, and is resting your arguments on the third and fourth prongs? No, we'd also argue that it was not plain error. It certainly didn't affect Mr. Sweet's substantial rights, but there's nothing erroneous about pointing out that the defense was engaged in blaming of the victim. That's what Mr. Sweet was doing through a lot of his cross-examination questions, very vivid details that he was asking the victim to recall about sex acts, both consensual and non-consensual details. And there's nothing wrong about pointing that out, there's nothing wrong about making reasonable inferences based on the evidence, including those Facebook and Instagram posts that showed that Mr. Sweet had a demonstrated history with underage girls. Was she the only witness that he cross-examined at trial? Yes, yes, Mr. Campbell cross-examined all the other witnesses. With that, the government would ask the court to affirm. Thank you. I'm gonna start with a few points on the first issue and then just touch on the plain error prosecutorial misconduct. So, as I understand the thrust of the government's argument just now is that they're trying to walk back this concession. They make a trial that Mr. Sweet has no notice of a basic theory of prosecution, and that is because my client appears to have a litigious nature that's just not relevant to this inquiry. You can slow down just a little bit. My apologies. So, none of the things the government suggests that Mr. Sweet could have done after the harm had already occurred in this case bear on the question of whether there's harm. Okay, he could have objected another time. The government's already said he's surprised. There's no, like we haven't told him about this theory of prosecution. The court's aware of it. We don't need the defendant to repeat what the court has already asked the government about and what the government has responded to. There's no basis in law for this idea that because the client is particularly litigious then has to continue to be extremely forceful after we already know that an error was put before the judge and the judge has ruled on it. And again, it's not about how clear Mr. Sweet's objection was at trial. He says objection, and immediately the district court starts talking. The question that we're asking here is was the substance of this wrong put before the district court in some way, sua sponte or by a litigant? Did the district court appreciate that there was a surprise theory thrown upon Mr. Sweet at trial because the indictment was pled very broadly? Of course it did. We see that in the call of leave with the government. It's not about what Mr. Sweet does under Hernando Rodriguez's doctrine. It's does the court know that this is an issue and does it rule on it? And the answer here is yes. With respect to harm, I think the government just said we don't know for sure what the jury convicted him under. Well, that's not harmlessness beyond a reasonable doubt. They need to prove that this lewd molestation theory did not contribute to the verdict, and they can't do that here because there was specific evidence of his persuasion for the lewd molestation theory that we don't see for any of the other accounts. I want to crack the record a little bit because there's no indication that these videos were made when she was 15. There's a year of conversation that happens between Mr. Sweet and MLC where she's turning 16 over the course of that conversation, and the photographs start out as sexually related. The only child pornography that's before the jury occurs in September 2020, November 2020, and July 2021. So from an attempt enticement perspective, I don't think that the government can show harmlessness. If I might address the prosecutorial misconduct. So I understand the government here to be saying that because these questions were really sensitive and they were about sexual topics, that that was an inappropriate type of cross-examination, and maybe that would be true if this case were about a robbery offense, but it's about very uncomfortable sexual activity, and Mr. Sweet is exercising his right to cross-examine the primary factual witness that the government puts forward and he does so by asking details about the facts of this case. And I don't think that that's any different than saying, it was wrong for you to exercise your right to cross-examination in this case. In terms of the Facebook posts, these do not show that the government did not distort the evidence in closing arguments. The Facebook posts were not dated. They don't say he has a history with multiple different 16 year olds and they could easily have been understood by the jury to be about MC. Thank you. Thank you, counsel, for excellent arguments. The case is submitted. Counsel are excused and we will stand in recess for 10 minutes or so.